The fourth district appellate court of the state of Illinois has now convened the Honorable Thomas M. Harris presiding. Right. Good afternoon, counsel. This next case is case number four dash 21 dash 0561 people versus patent and counsel. Could you identify yourselves for the record first for the appellant. Joshua Scanlon. Thank you. And for the appellate. John Zimmerman your honor. Thank you, Mr Scanlon you may proceed. Thank you, Your Honor. May I please the court counsel. My name is Joshua Scanlon I'm here today representing Dakota patent in his appeal and requesting that this court reverse his conviction outright, where the police lacked any reasonable suspicion on which to base a Terry stop. In the alternative we asked for remand for appropriate Crankle proceedings, where Mr Patton raised a post trial claim of ineffective assistance of counsel. The primary issue in this case is that the truck in which Mr Patton was a passenger was stopped by police, because they just wanted to, in the words of one of the officers, see what we can get. In other words, this was essentially a fishing expedition. And that is not an appropriate basis for an investigative stop under Terry. In order to make an investigative stop police must have a reasonable suspicion, which must be based on, which must be based on more than an inchoate or unparticularized suspicion or hunch. It must be justified at its inception by specific articulable facts, warranting the intrusion. A Terry stop may not be used as a general search for evidence of any kind. Here, the state seeks to use two events to establish facts on which to base suspicion, but neither the February 8 shooting, nor the reports of shots fired on February 14 provided a reasonable basis. I apologize. Let me ask you this. For purposes of our argument here. If Officer Miller, I recognize that the truck was the one involved in the February, eight case forget about today's the 14th. Would that have been reasonable suspicion to stop that vehicle. That alone. No, Your Honor. And the reason that would not be sufficient was because no possible connection the truck might have had to the February shooting was at all valid by the February 14. No, I'm saying that if the sole basis of the stop was because she recognized and identified that as being involved in an earlier shooting February, eight, which she would have been a reasonable suspicion to stop that vehicle at that just for that basis. And the answer Your Honor is no, because of everything that happened following the February shooting. So, the February shooting at the time of the stop no longer provided a reasonable basis and the reason for that. There are several reasons for that. First and foremost, there was a significant distance in time and space. It was over the plate the location of the stop was over two miles away from the location of the shooting on February, and it was six days later. It was a completely different place at a completely different time. So, then, with that being the case, why wouldn't Miller have had reasonable suspicion to stop this silver truck that's driving away from the dollar store when she had all of these factors. That one she knows about the February, eight situation, it matches the details of the truck at the blue store surveillance that it was. It was parked behind auto zone and then move with that be enough to give her reasonable suspicion for the stock. No, Your Honor, and I'll dispute slightly the connection between the truck and the February shooting was not 100% slam dunk clear. At that point, requirement. No, Your Honor, it's not, but that is mentioning. Because the fact that officer Miller was the fact that the victim didn't identify that particular truck in that particular shooting makes, I guess, I would say lowers the possibility for suspicion at a later at a later time. I will note there was also a number of other silver vehicles in the surveillance photos that that truck was the main subject of the silver vehicles, Indiana license plates a toolbox in the back of brush guard and rust on the side. Not No, Your Honor, not not not as far as characteristics that a careful police officer could rely upon and conclude that this vehicle matches the description of the vehicle in which we're interested. Certainly, an officer could rely on them matching the main subject of the surveillance photos. Yes, I believe they could, and they use that to identify the truck, the day after the shooting on February 9 when they found it. They interviewed the owner, and they searched the truck and found nothing of evidentiary value within it. Once that investigation had completed, and or I shouldn't say, once that investigation had taken place when they had found the truck interviewed the owner and searched it. They no longer had a reasonable basis for suspicion of that truck, barring some additional indication that that truck was involved in criminal activity. And there was no indication after that investigation that that truck was engaged in further criminal activity. Mr. Scallon, you're aware of our case here in the fourth district Dunmire where this court in deciding what is reasonable suspicion indicated that it is considerably less than proof of wrongdoing by a preponderance of the evidence and obviously less than that's necessary for probable cause. How does that factor in your decision that they had Miller still had no reasonable suspicion to stop this vehicle. Well, Your Honor, I don't believe it's significantly applicable here and the reason is this, the basis for reasonable suspicion still has to be some specific fact on which to believe that criminal activity took place or is taking place. Right. So, even though they didn't need to have probable cause to arrest someone at that point in time, they still needed some specific fact, off of which a reasonable suspicion of criminal activity would exist at the time they made the stop. Mr. Scallon, what do we have? We have shots that are fired a block away from where this vehicle is. It matches the description of an earlier situation on February 8th where shots were fired. Yes, Your Honor, because the February 14th reports of shots fired had no connection at all to the truck that was stopped in this case. There was no description of any suspect or vehicle involved in the shots fired reports on February 14th, much less the specific silver truck that police stopped here. The truck was not fleeing the area. It wasn't even leaving the area when police found it. It was stationary, sitting parked in the parking lot of Family Dollar with one of the occupants inside the store. Unlike most of the other cases, like the Rojas case that the state relied on in its brief, where police actually themselves heard the shots, went to the area where they heard shots coming from, and had a vehicle or a person fleeing the area at speed, that did not occur in this case. There was no basis to believe that this truck was in any way involved in the reports of shots fired. The simple presence of this truck in the vague, multi-block area from which the reports of shots fired came was not sufficient to provide a reasonable suspicion of criminal activity. Because there was no reasonable basis to believe that this truck was connected to the shots fired reports on February 14th, the state would have to rely entirely on the February 8th shooting as a basis for suspicion. And because the police had conducted the intervening investigation, they had interviewed the owner, they had searched the truck already, there was no further basis for them to make a stop based on February 8th without some additional indicia of criminal activity to connect to the truck and give them a basis for the stop. Where they could not have stopped the truck based on the February 8th shooting, and the February 14th reports of shots fired could not provide a connection to further criminal activity, police had no reasonable suspicion on which to base the stop. Thus, the evidence that was derived from that stop should have been excluded, and attenuation does not operate to save the evidence in this case. Attenuation is based on three factors, temporal proximity, the presence of intervening circumstances, and the purpose and flagrancy of any official misconduct. The first two factors weigh against attenuation in this case. Close temporal proximity. The default is that close proximity in time favors suppression. The search here occurred within minutes of the improper stop. There was no additional time under which the taint of the improper stop could have dissipated to allow this factor to weigh in favor of attenuation. There were also no intervening circumstances. Because the search came on the heels of the stop, there was no chance for an intervening circumstance to distance the search from the stop. Unlike cases that involve flight or similar actions as an intervening circumstance, nothing here terminated the unlawful stop, the unlawful seizure that caused the search. The driver's consent to the search was itself a direct and immediate result of the improper stop. The People v. Marcella case is illustrative of this point. Their law enforcement arrested and detained Marcella, did a search of the area for weapons, and then obtained consent in order to enter his plane where they obtained the evidence that they later used against him. Where this all occurred in quick succession, the appellate court determined that any consent police obtained was inextricably linked to the improper seizure, and therefore there could be no attenuation based on that. The same is true here. Where consent occurred right away following the stop, it was inextricably linked to the improper stop, and there could be no attenuation. As the state's entire case against Mr. Patton depended on the fruits of that improper stop, such that it would have no case on remand, Mr. Patton's conviction should be reversed outright. As to the Krankel issue, the purpose of Krankel proceedings is to promote a full consideration of pro se claims of ineffective assistance in the trial court in order to limit the issues for appeal. That includes creating the record necessary for those claims to be evaluated on appeal, and that record can't be created without an inquiry, which the court here failed to do. The first stage of the Krankel process, this preliminary inquiry, is triggered if the defendant raises a pro se claim of ineffective assistance. In doing so, the defendant does not need to use the specific phrase ineffective assistance, or even particularly voice his displeasure with counsel. It is sufficient for the defendant to alert the court that counsel failed to do something he should have done. This is exactly what Mr. Patton did. When Mr. Patton was admonished on his right to testify for the first time after trial, he immediately informed the court that his attorney was wrong, that he had not voluntarily chosen not to testify, that he felt he was denied his right to testify, and that his attorney had known that Mr. Patton wished to testify. So what about this is, put this in context. If that's really what these remarks of the defendant mean, and that's how we should interpret them, then going back to the stipulated bench trial. How should we view the circumstances when the defendant was present when, one, the prosecutor said, these are the stipulations as far as agreed to, as far as evidence to be entered in this court. Two, defense counsel stated no objection to the submission of the stipulation to evidence. And three, defense counsel announced he was arrested without presenting any evidence of his own. And the defendant never said anything about that, never indicated he wished to testify. And under these circumstances, when the defendant mishears the entirety of the evidence being presented to the court, did not include his testimony. Why doesn't that suggest that his later remarks are just buyer's remorse as opposed to a claim that, gee, I really wanted to testify and my lawyer wouldn't let me. Well, Your Honor, I think the significance of that is that he was relying on his attorney and that's it in that situation. And, well, I'm not sure I understand what that means. He's there, he's hearing what's going on, he's hearing the presentation. Are you suggesting there's some doubt on this record that the defendant was being told, everyone was being told that there would be no further evidence presented including his testimony. Your Honor, I think there was perhaps his recognition of those stipulations, but perhaps a lack of understanding from him that that meant he wouldn't testify at all. At the very least, that's the plain indication of his statements post trial. Well, of course, that's true, that's post trial. And another way to look at that is, gee, I'm not sure I like this, having stipulated, this wasn't a good strategy because I was convicted. But the whole business about, gee, I wanted to testify and my lawyer wouldn't let me. How is this consistent interpretation we should make of his remarks consistent with his saying nothing when the court went through the stipulation and there is no reason to think that any reasonable adult wouldn't understand your testimony is not going to be part of it. What about that? Well, Your Honor, I would say where he was relying on counsel, this indicates his lack of understanding. Pausing right there again. There are some things that are very tricky in a criminal case. You know, when counsel chooses to put on some evidence or some tricky legal aspect of it, you know, hearsay rules and all that, you wouldn't expect a civilian to really understand the defendant. Well, one of the things that isn't tricky is you're testifying or you're not when you're the defendant. And if he claims, gee, I want to testify, and the proceedings end and there's no reference to his testimony and the court made pretty clear that his testimony wasn't going to be part of it. What's tricky about that? What didn't he understand? Why should we accept your argument that he was confused? Well, Your Honor, I think the indication from this is that what the court should have done is engage in the inquiry, because if the court had engaged. You know, counsel, that's a good point. And I don't know that there'd be any dispute that a better practice to avoid this very issue would have been for the court to have engaged in that return to the defendant that the stipulation said, by the way, you understand the stipulation isn't going to include your testimony. But pausing right there, as a matter of fact, what if the court had said that? And the defendant says, yeah, I understand that. And everything else happened just the same with the trial court, your judgment still be required to go through a critical hearing? Perhaps not. Perhaps not. You mean it's not certain yet? Not having that situation before me, Your Honor, I'm not certain. I think it would depend on the words used and whether or not there was some other indication of his lack of understanding. On that plain system, on that plain statement that you presented, probably not. There wouldn't be the need as much because there would be clear indication that he understood his testimony was not going to be included. In the same vein, the trial court, after the stipulated bench trial and at a subsequent proceeding, just prior to these remarks that we're talking about here, points out that the defendant hadn't been admonished in regards to his right to testify. What was the significance of that? I mean, is part of this dependent on the trial court not having admonished a defendant prior to the stipulated bench trial or at the time of the stipulated bench trial? I'm just trying to figure out what the significance of the trial court's later admonishment just prior to your client's remarks that you say triggered the need for a crankle hearing. Well, Your Honor, I'd say it would certainly have been more clear if the trial court had done it ahead of time, but the trial court was not required to do it. Justice Steigman says that's an obvious right. Your client knows he's got the right to testify and he doesn't say anything at the time of the stipulated bench trial. How does this come up and what's the point of it? There's already been a finding of guilt. What are they trying to do here? I'm sorry, Your Honor. I guess I'm not sure I follow the question. Yeah, there's already been a finding of guilt. The stipulated bench trial has occurred, correct? Yes, Your Honor. And at a subsequent hearing, there apparently has been a conference between the lawyers and the judge and the judge admonishes defendant regarding his right to testify. Is that right? Yes, Your Honor. But the stipulated bench trial has already occurred and a finding of guilty has already been entered. Is that right? Yes, Your Honor. What was the point of admonishing the defendant as to his right to testify at trial at that point? I think, Your Honor, that is something that the Krankel inquiry would help to clarify. I think it's an indication that Mr. Patton didn't have a full understanding of his right to testify or some indication that he wished to testify and expressed his wish to testify and the court and the parties realized that he had never been admonished about it. It was ultimately counsel's duty to ensure that his rights were followed through with, that he was informed of his right to testify, and that if he wished to testify, he was allowed to do so. And where he made clear that he told counsel that he wanted to testify, it suggests a claim of ineffective assistance, something that counsel failed to do, a right that counsel failed to follow through with. Whether that claim has legs, if you will, is dependent on this Krankel process, which didn't occur. And that is why that inquiry was needed, in order to assess whether there was any value or any merit to this claim. You're familiar, no doubt, from having read lots of criminal records that it's a practice of lots of trial courts. And when this court encourages to make a record about how the defendant understands that about his right to testify, it's his personal choice and all that. And to do that, when the state has rested, before we have an issue about the defendant's own testimony and the defendant's case in chief. But in fact, what's interesting is, had none of that occurred, and if the trial court not volunteered what it did in this case, there'd be no issue here at all. Isn't that correct? Namely, it's not error to not do that. Supreme Court has made pretty clear to not so advise the defendant. And if the trial court not volunteer all this, to which the defendant responds, oh yeah, sure, I want to testify. We'd have nothing in this record to create any crinkle issue, would we? I see my time expired, may I briefly answer and then you may respond to Justice Steigman's question. Thank you. Yes, Your Honor, if the court had not done this, there is a possibility there would not be, there certainly wouldn't be the crinkle issue in this case. I don't think that means there would be no issue of ineffective assistance of counsel if counsel did something wrong in this respect. Mr. Patton might have a post conviction claim of some kind. But yes, you are correct, there would not be an issue on this record. That being said, I ask that this conviction be overturned or crinkle proceedings. This be remanded for crinkle proceedings. Thank you. All right. Thank you, Mr. Scanlon. Mr. Zimmer. May it please the court, counsel. Good afternoon, Your Honors. My name is John Zimmerman. I'm here on behalf of the state with the Fourth District Appellate Prosecutor's Office. In response to the first issue, which is the motion to suppress, the state would just reiterate the standard of review, which is trial court's findings are reviewed for clear air and given due weight any inferences. And I think that's important in this case where the state and defense do not really disagree on what the facts are. The defendant just disagrees that those are insufficient for articulable reasonable suspicion. The state's position is that the trial court did properly find reasonable suspicion. Again, there were these two shootings on the eighth and 14th, the defendant was found in the passenger vehicle was stopped and arrested in the firearm was located. The shots were fired on both occasions, the silver truck was extremely unique and identifiable was over 25 years old it had rust toolbox, etc. And the trial court's focus on the nexus between the close temporal and physical proximity of the vehicles and shootings did support that there was reasonable articulable suspicion. And on appeal defendant is simply reasserting the same arguments, he made below. He does seemingly glance over other important facts. Some of these, I'm not sure we're even previously discussed in this argument that the officers were all aware of defendants prior gun charges that defendant had been involved somehow in the February, eighth shooting with the silver truck. He also does not really discuss the inter departmental alert regarding defendant and the silver truck, and that defendant was known to be in possession of the silver truck on February 13, the day before the last shooting. Also the silver truck on the day of the 14 shooting was located in close proximity, and only 14 minutes after the shot fire calls were made. So this these facts taken together in the state's mind clearly prove reasonable suspicion for a stop and defendant focuses on the investigation of the vehicle and how this dissipates the suspicion. However, as stated by at least two officers at the hearings below the investigation was still ongoing. And just because an officer investigate something and doesn't find something in that vehicle does not mean investigations over just because they go to a house And further supporting this was that after that investigation, where the owner, let the police search the vehicle, and this was prior to the 14th, the defendant, like I just previously stated was seen again in the vehicle. This was the 13th, but one day before the 14th, where the shooting occurred. And the state also asserts that there's the collective or imputed knowledge doctrine that supports reasonable suspicion. Again, the facts I just previously stated multiple officers tested similarly to each other. There's also the exhibit regarding the officers radio discussions of the vehicle. This further supports that there is reasonable suspicion for the stop. Alternatively, assuming this court would disagree the attenuation doctrine should apply as the vehicle owner consented to the search of this vehicle. The defendant attempts to distinguish the state's cases regarding the attenuation doctrine. However, in response to this, the state did find an additional case people versus Foskey. Which is a 1990 case where our appellate court held that although an entry to the defendant's residence and his warrantless arrest were unlawful. Neither the heroin or the defendant statement needed to be suppressed for the defendant's wife consented to a search after the legal entry. So there are cases that held that the consent to a search can be an intervening circumstance. And that is exactly what also occurred here. As defendant conceded there was no flagrant official misconduct and there was consent to search. This was an intervening circumstance that supports the funding attenuation doctrine should apply. The state also briefly argued there was additional probable cause after the police stopped the vehicle and the driver of the vehicle stated, thank God, this is over. There's a weapon in the vehicle. Again, this implied the victim was being held against his will. The officer's new defendant was a known felon. And if there's a possession if there's a firearm in the vehicle that could either be constructive possession actual possession just depending on the facts. And then the defendant makes made an argument regarding the attenuation doctrine about. He used the word not extricably inextricably linked. However, in this case, if there was no consent given the officers would not have been able to search unless there was some type of contraband in plain view, so they were only they would only be limited to go into the vehicle saying How are you guys doing. Do you know anything about the shots fired, they don't just have the probable cause of search right away. So the consent here is important because it is clearly a intervening circumstance. So alternatively, if this court would disagree with the state's initial argument, the attenuation doctrine should apply and the state would request this court from the trial courts judgment. Now regarding the crinkle inquiry. Here the state initially argues the defendant failed to even adequately trigger a crinkle inquiry. The state's position would be that his position his statements were a little bit ambiguous at best. And even assuming it should have been sufficient to trigger a crinkle inquiry. The state would argue one did occur here. The trial court did follow up and say, Well, what do you mean regarding this and then it stated, Well, I spoke to defense counsel and he said you didn't want to testify. And then as justice statement pointed out, if you look at the stipulated bench trial three days prior to the crinkle hearing and defendant's statements, it clearly shows he has an understanding of what a stipulated bench trial was. In other words, that the facts would be stipulated to and the trial court even asked defendant, you've asked all the questions you want to ask your attorney and gotten the answers and defendant replied, Yes, sir. So because defendant agreed to a stipulated bench trial, and he was fully aware of what that meant, the record proves he did not actually want to testify. Further supporting this is the obvious trial strategy of the stipulated bench trial. Again, defendant agreed to this and defense counsel explicitly stated for the record, they were not stipulating to the sufficiency of the evidence. They were simply stipulating in order to fast track the case to the appellate court. As this was clearly a matter of trial strategy. trial court was aware of defense counsel's past conduct throughout the proceedings, and that the fact that the trial court inquired into defendants initial claims, the state's position is that this was sufficient for crinkle. Mr Zimmerman I have no concerns about you know you saying that this decision to proceed the stipulated bench trial as a matter of trial strategy I think counsel explicitly stated on the record that they wanted to fast track it for appeal, but in your brief. When you're talking about the defendants comments, and you say, you know, this is in relation to the, the claim that a crinkle inquiry was called for you say the trial court nevertheless conducted a proper inquiry by asking defendant follow up questions, and subsequently implicitly finding his claims were meritless and were due to trial strategy. And I just simply want to ask you where in the record. Was there an implicit finding made by the trial court that defendants claims were meritless and due to trial strategy. Let's say implicitly, it was when the trial court adjourned the hearing. Okay, so the fact that the trial court didn't comment further was the implicit finding. Yes. I see. Okay. I think further supporting that would be the court stating. After it was inquiring to defend it, your lawyers indicated me that after discussions with you it's your personal involuntary decision that you do not want to testify. Is that correct, so the trial court was seemingly relying on past conduct of defense counsel as well as conduct of the proceedings. So the stipulated bench trial occurs three days before, then there's this colloquy in regards to the right to testify. And at the conclusion of it, the, the trial court says, if I can find it. Well, having been so advised words to that effect, do you wish to testify, or, or it's my understanding you do not wish to testify and that's then when the defendant engages in this or expresses his concerns about not being able to testify. What was the trial court going to do vacate it's finding of guilt and what I don't understand what was going to happen at that point when he asked the defendant, it's my understanding you don't wish to testify. I could agree with why that is confusing your honor the record is somewhat there. And they do go back to chambers and have a discussion, but the state would just reiterate that based upon a review of the record as a whole. The defendants assertions that he did want to testify, or just regret for now being sentenced or convicted of following the stipulated bench trial. So Council as a follow up to Justice Harris comments so you don't believe he was going to try and in some way, open up proofs again from this record. Your Honor, do you allow the defendant to testify. Can you rephrase that question. In other words, was the judge going to vacate his ruling and open proofs up again do you believe that's where he was leaning to is there any, any evidence to support that. I do not believe there's any evidence to support, either way, based upon the record. But I would say in regards to the cranky inquiry. It was, it was sufficient to satisfy crinkle. And so, for the above reasons the state would request this quarter from the trial courts judgment and if there's no further questions the state would rest. Okay, thank you, Mr Zimmerman, Mr Scanlon rebuttal argument. Yes, Your Honor. I just want to touch on a couple of the things that Council said first and foremost, Council brought up the state brought up. Mr Patton's possible connection to the truck as a basis for reasonable suspicion, Mr Patton's presence or possible connection to the truck in this case, did not provide a reasonable suspicion here for a couple of reasons but first and foremost that they didn't know who was in the vehicle. They didn't know that Mr Patton was in the vehicle they both testified very specifically that their suspicion was to the vehicle, and not to any person who might or might not have been in it. Why isn't that adequate, when you have the silver vehicle, allegedly being involved in these two shootings and eight days in fairly close proximity to each other. At that point, what does it matter to the police, who's involved they'll stop the car and figure that out. The question is, isn't that enough. And by the way it's articulable suspicion, they certainly articulated, isn't that enough to justify a stop in the vehicle. No, Your Honor, and the reason is, it was not articulable of an actual suspicion, they articulated their, their, their reasons for stopping it which was that the conversation that the two officers had immediately prior to the stop could boil down to roughly this question. Do we still have some suspicion of this vehicle. Officer Miller, or Detective Miller responding. I don't know. Here are some of the things we've learned since the February 8 shooting. And then Officer Jeffrey saying, well, we'll go ahead and do a stop and see what we can get. Council that's an interesting point but isn't it true that we are supposed to listen to the testimony and wait the circumstances and then make an independent judgment, whether or not this constitutes articulable suspicion that is. We're not just, I think it was, I forget the name of the case now but we're not subject to the limitation by what the police intended or didn't intend or motivation or lack of it. In other words, if the facts, which aren't in dispute known to the police were justified a reasonable person. Under those circumstances to have an articulable suspicion regarding this car to be able to stop it. Isn't that are the important before us and not necessarily what officer accent officer why in doing so. Yes, Your Honor. I think the officers conversation is indicative of the facts that they that were valuable to them, and of what the facts actually suggested they had they had knowledge of at that time or what, what was available to them. And in particular, any suggestion that their knowledge related to Mr Patton. First of all, their knowledge about his criminal history wouldn't be sufficient to justify a reasonable suspicion without some indication that he was a shorthand version. We got two shootings within eight days, the same general area of Danville, and the shootings are bad and we have this truck, which has been now identified twice as being connected in some fashion in the area at a minimum, where the shootings occur. After the second shooting. Let's stop and find out what's going on. Why isn't that enough. Because your honor in this case, particularly with regard to the February 14 shooting. There is nothing actually connecting that truck to that shooting. The only thing, the only thing that can connect that truck in any way to that shooting is it's mere presence in the area, not fleeing, but doesn't. Given the knowledge of the officers about the February 8 shooting six days before. Why doesn't that, combined with what they do on February 14 give them enough to say something's going something's funky with this truck, let's find out what it is and stop it. Because if that were the standard, the officers would be allowed to stop that truck at any time. Regardless of any additional reason they had, they had investigated the truck, they had found no evidence. The further evidence that they were gathering the truck on February 14 totally stopped. I'm sorry, your honor. They had investigated the truck in the 14th until they stopped. Not that day. No, I see my time is up. May I briefly respond. You may. Thank you. If they are allowed, based on the February 8 shooting to stop it, then they can stop it at any time. How many times were they able to stop it after they had already investigated it. And how many times, how often, and based on nothing more than the existence of that truck somewhere in connection to the February 8 shooting without some additional connection to further criminal activity, which the February 14 reports of shots fired could not provide. Without some additional indication that it was engaged in criminal activity. There was simply no basis to stop it based on that previous February 8 shooting anymore. On that basis, the evidence should have been suppressed, your honor. Thank you. All right. Thank you, counsel court will take this matter under advisement and issue a written decision court stands in recess.